UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS JAVIER IRIAS,<br><br>Petitioner,<br><br>v.<br><br>WARDEN-FACILITY ADMINISTRATOR, Adelanto ICE Processing Center, et al.,<br><br>Respondents. | Case No. 5:26-cv-06228-DTB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.

## PROCEEDINGS

On October 19, 2026, petitioner Carlos Javier Irias ("Petitioner"), proceeding pro se, filed a verified "Motion for Habeas Corpus, Preliminary Injunction and Temporary Restraining Order, [and] Show of Cause" ("Petition") (Docket No. 1) and a Motion for Appointment of Counsel (Docket No. 2). Although the Petition does not allege claims in an artful manner, the Court construes that Petition as alleging the following claims for habeas relief: (1) Petitioner has been subject to unlawfully prolonged detention; (2) Petitioner was arrested and detained without a

warrant or probable cause, in violation of his right to due process under the Fourth, Fifth and Fourteenth Amendments; and (3) Removal of Petitioner to a third country without adequate notice or a hearing would violate the Convention Against Torture and Petitioner's right to due process under the Fifth Amendment. (Id. at 1-16).[1] Petitioner seeks release from custody or a bond hearing. (Id. at 3, 9, 17).

On October 23, 2026, the Court referred this matter to the Office of the Federal Public Defender ("FPD") for consideration of appointment of counsel, and ordered the FPD to file a response indicating whether the FPD will represent Petitioner, decline representation, or recommend appointment of counsel under the Criminal Justice Act. (Docket No. 7).

On October 28, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 5), Respondents filed an Answer to the Petition ("Answer") (Docket No. 11), accompanied by one exhibit (Docket No. 11-1). In the Answer, Respondents acknowledge that Petitioner, a detainee under 28 U.S.C. U.S.C. § 1226(c), appears to be entitled to request and receive an initial bond hearing pursuant to Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1165(9th Cir. 2026). (Id. at 2). In the Answer, Respondents also state that "[w]hile Petitioner also seeks immediate release, to the extent Petitioner would be entitled to any remedy via the Petition, at most it would be ordering a bond hearing to be held before an Immigration Judge under Section 1226(a)." (Id.).

On October 29, 2026 (after receiving an extension of time, see Docket No. 10), the FPD filed a Notice stating its representation of Petitioner. (Docket No

On November 10, 2026, Petitioner filed a Reply in support of the Petition (Docket No. 19 at 1-14), accompanied by seven exhibits (id. at 15-33).

---

[1] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

Thus, this matter is now ready for decision. For the reasons set forth herein, the Court grants the Petition.[2]

## II.

## BACKGROUND

Petitioner is a native and citizen of Honduras. (Petition at 2; see Docket No. 11-1 at 3). In 1990 or 1992, on an unknown date, Petitioner, who was 15 years-old, entered the United States from Matamoros, Mexico, without being admitted or paroled. (Petition at 2; Docket No. 19 at ¶ 3; Docket No. 11-1 at 1). Petitioner came to the United States because gangs and cartel members in Honduras threatened to kill him if he did not join them. (Docket No. 19 at 18). On December 22, 2022, Petitioner filed Form I-821, Application for Temporary Protected Status ("TPS"), with the United States Citizenship and Immigration Services ("USCIS"). (Petition at 2; Docket No. 11-1 at 3). On May 10, 2023, USCIS approved Petitioner's Form I-821. (Petition at 2; Docket No. 11-1 at 3).

On January 26, 2024, Petitioner filed Form I-765, Application for Employment Authorization, as a renewal based on the TPS. (Docket No. 11-1 at 3). On December 26, 2024, USCIS approved Petitioner's Form I-765 and produced an employment authorization document under category A12, which was valid through July 5, 2025. (Petition at 2; Docket No. 11-1 at 3).

On July 3, 2025, Petitioner filed Form I-821, Application for TPS, as a re-registration applicant who had previously been granted TPS. (Docket No. 11-1 at 3). On September 24, 2025, USCIS terminated Petitioner's Form I-821 based on the termination of the TPS country designation by the Federal Register Notice. (Id.; Docket No. 19 at 5).

---

[2] Since the Court is granting habeas relief, Petitioner's application for a temporary restraining order and/or preliminary injunction is DENIED as moot.

Petitioner alleges that on September 9, 2026, while Petitioner was on his way to court, Immigrations and Customs Enforcement ("ICE") agents detained him without any warrant or probable cause. (Docket No. 1 at 3). According to Form I-831, Record of Deportable/Inadmissible Alien, on September 24, 2026, Enforcement and Removal Operation Los Angeles Fugitive Operations ("ERO") officers, "wearing clearly marked body armor with 'POLICE' and 'ICE' displayed on the front and back," conducted a targeted enforcement operation in Carson, California, during which they identified themselves as ICE officers, informed Petitioner of the "ongoing investigation," conducted a field interview (during which Petitioner admitted to being unlawfully present in the United States), and arrested and detained Petitioner. (Docket No. 11-1 at 2-3).

On an unspecified date, ERO served Petitioner with a Notice to Appear, Form I-862, charging him under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (See Docket No. 11-1 at 5).[3]

Petitioner has resided continuously in the United States since 1990. (Petition at 2). Petitioner has a "husband and wife" relationship with his "wife," even though they are not legally married. (Docket No. 19 at 18, 22). He and his "wife" had their first child in 2006 and now have four children together, the youngest of which has special needs and requires full-time care. (Id.). Petitioner has done construction work in the United States. (Id. at 18). Until his detention, Petitioner was the primary financial provider for his family. (Docket No. 1 at 3; Docket No. 19 at 18, 22). Petitioner does not have any criminal history. (Docket No. 1 at 2; but see Docket

[3] Neither party has provided the Court with a copy of the Notice to Appear, Form I-862.

No. 11-1 at 4). Petitioner has appeared at all of his yearly check-ins with immigration judges. (Id.).

Petitioner is being detained at Adelanto ICE Processing Center in Adelanto, California. (Docket No. 1 at 2; Docket No. 19 at 18; see https:/locator.ice.gov/odls/#/results).

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

As noted above, Petitioner has raised a claim under the Due Process Clause of the Fifth Amendment, which prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670,

673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (internal quotation marks omitted); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process.") (internal quotation marks omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

## IV.

## DISCUSSION

### A. Petitioner's Due Process Claim Warrants Habeas Relief.

In the second claim of the Petition, Petitioner alleges that he was detained without a warrant or probable cause, in violation of his right to due process under, among other things, the Fifth Amendment. (Docket No. 1 at 2-3). In the Reply, Petitioner explicitly alleges that the government's denial of procedural protections

afforded by 8 U.S.C. § 1226(a) ("Section 1226(a)") violated Petitioner's right to due process under the Fifth Amendment. (Docket No. 19 at 5-8).

Initially, the Court notes that Respondents failed to respond to Petitioner's allegations in the Petition and/or the Reply that Petitioner was denied Section 1226's procedural protections by virtue of his warrantless arrest and the failure of immigration officials to provide him with an initial custody determination (see Docket No. 1 at 2-3; Docket No. 19 at 5-8). (See Docket No. 11). Accordingly, the Court construes Respondents' failure to contest Petitioner's due process claim as a concession to its validity pursuant to Central District of California Local Civil Rule 7-12.

Petitioner alleges that on September 9, 2026, he was arrested without a warrant during a targeted enforcement operation. (Docket No. 1 at 2; Docket No. 19 at 5; but see Docket No. 11-1 at 2-3 (stating September 24, 2026 as the arrest date)). Respondents have not rebutted that allegation, and Respondents have not raised any exception to the warrant requirement.

Petitioner further alleges that following his arrest, he was not provided with an initial custody determination by an immigration officer (Docket No. 19 at 5-6), and there is nothing in the record before the Court to indicate that Petitioner had received a custody hearing before an immigration judge as of the date the Petition was filed on October 19, 2026. Petitioner has remained in custody since his arrest and detention on September 9, 2026 or September 24, 2026. (Docket No. 1 at 2; Docket No. 19 at 18).

On these facts, Petitioner contends that his arrest and continued detention violate Section 1226(a) and the Due Process Clause of the Fifth Amendment. (Docket No. 1 at 2-3; Docket No. 19 at 5-8). The Court agrees.

/ / /

Section 1226(a) "sets out the general rule" for the arrest, detention, and release of noncitizens present in the country who are believed to be subject to removal. Nielsen v. Preap, 586 U.S. 392, 396 (2019). Under Section 1226(a) and its implementing regulations, a DHS officer may arrest and take into custody a noncitizen "under the authority of Form I-200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b). The Government "may" detain such individuals "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). DHS officers conduct an initial custody determination. 8 C.F.R. § 1236.1(c)(8). Unless the person is subject to mandatory detention based on their criminal history, 8 U.S.C. § 1226(c), DHS has "the discretion either to detain the [noncitizen] or to release him on bond or parole." Nielsen, 586 U.S. at 396. The DHS officer may release the noncitizen if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

After the initial custody determination, the noncitizen may request that an immigration judge review the DHS officer's determination at a bond hearing in immigration court. See 8 C.F.R. § 1236.1(d)(1) (permitting a noncitizen to request amelioration of the condition of release in front of an immigration judge "after an initial custody determination"); 8 C.F.R. § 1003.19 ("Custody and bond determinations made by the service pursuant to 8 CFR part 1236 may be reviewed by an Immigration Judge pursuant to 8 CFR part 1236."). "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the [Immigration Judge] will order his release." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting Matter of

Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006)). The noncitizen can "appeal an adverse decision to the [Board of Immigration Appeals]." Id. (citing 8 C.F.R. § 236.1(d)(3)). Alternatively, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." Id. (citing C.F.R. § 1003.19(e)). "The same procedures apply to this new hearing, and its outcome is also appealable to the [Board of Immigration Appeals]." Id. The noncitizen may also seek judicial review of the bond determination through a habeas petition challenging the determination as constitutionally deficient, legally erroneous, or an abuse of discretion. See Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024).

Reviewing this statutory and regulatory framework, the Ninth Circuit has observed that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." Rodriguez Diaz, 53 F.4th at 1202.

However, it appears that Petitioner was not arrested and detained pursuant to Section 1226(a), but was instead subjected to the DHS Policy, issued on July 8, 2025 and entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," in which DHS announced that it had "'revisit[ed] its legal position on detention and release authorities,' determining that Section 235 of [INA] would serve as the applicable immigration detention authority rather than Section 236 for all 'applicants for admission.'" Bautista, 813 F. Supp. 3d at 1094 (quoting the July 8, 2025 notice). "In other words, the change in policy requires ICE employees to

consider anyone arrested in the United States and charged with being inadmissible as an 'applicant for admission' under 8 U.S.C. § 1125(b)(2)(A)." Id. The Board of Immigration Appeals ("BIA") has since issued a decision agreeing with DHS's position that such individuals are properly subject to 8 U.S.C. § 1225(b) ("Section 1225(b)"). See Matter of Yajure-Hurtado, 29 I. & N. Dec. 216 (BIA 2025).

DHS's new policy significantly impacts the rights of noncitizens like Petitioner and their ability to seek release from immigration confinement. Section 1225 applies to two categories of noncitizens: (1) "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation"; and (2) "Section 1225(b)(2) . . . serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." Jennings v. Rodriguez, 583 U.S. 281, 2877 (2018). Under the Government's new policy, noncitizens like Petitioner are categorized as falling within the second category — "applicants for admission" subject to Section 1225(b)(2). Under that provision, a noncitizen "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. 8 U.S.C. § 1225(b)(2)(A).

The Ninth Circuit has now held that individuals like Petitioner are properly subject to Section 1226(a). Rodriguez Vasquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026). Moreover, the final judgment in Bautista has preclusive effect for members of the Bond Eligible Class like Petitioner. See Granados v. Warden, Case No. 5:26-cv-00670-AH-DFM, 2026 WL 852211, at *3 (C.D. Cal. Mar. 25, 2026) ("[I]t appears that Respondents are precluded from relitigating whether "Bond Eligible Class" members—such as Petitioner—are entitled to the relief provided in the Bautista final judgment."); Cortez Lozano v. Santacruz Jr., et al., Case No. 5:26-cv-00313-SSS-BFM, 2026 WL 325462, at *4 (C.D. Cal. Feb. 4, 2026); see generally,

De Corral v. Woosley, Case No. 4:25-cv-145-BJB, 2026 WL 524778, at *3 (W.D. Ky. Feb. 25, 2026) ("Under settled principles of collateral estoppel, the Central District's final declaratory judgment binds the parties 'with respect to the matters declared.'") (quoting Restatement (Second of Judgments) § 33).

In this case, Petitioner should have received the protections mandated under Section 1226(a), including arrest pursuant to a lawful warrant (absent an applicable exception), a prompt initial custody determination by an immigration official, the opportunity to have any custody determination reviewed by an immigration judge, and the ultimate review of his custody status by the BIA. However, because the government arrested Petitioner under the incorrect authority of Section 1225(b), Petitioner was deprived of these protections and received none of the process he was due. Petitioner alleges—and Respondents do not dispute—that Petitioner was arrested without a warrant. (Docket No. 1 at 2; Docket No. 19 at 5). Petitioner also alleges—and Respondents do not dispute— that when Petitioner was taken into custody, there was no initial custody determination by an immigration official. (Docket No. 19 at 5-6). Notwithstanding Respondent's concession that Petitioner appears to be detained pursuant to Section 1226(a) (Docket No. 11 at 2), the Government abjectly denied Petitioner the protections afforded by the statute conceded to be applicable.

Accordingly, the Court joins the numerous courts in the Ninth Circuit which have found that the government's noncompliance with Section 1226(a), Bautista and similar rulings warrants release. See e.g., Tellez-Serrano v. Semaia, Case No. 5:26-cv-04183-BFM, 2026 WL 2574829, at *4 (C.D. Cal. Aug. 31, 2026); Reyes v. Santacruz, Jr., Case No. 5:26-cv-03394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026); Garcia-Maya v. Mattos, Case No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *7 (D. Nev. July 7, 2026); Rodas-Dieguez v. Noem, Case No. 3:26-cv-

00976-RBM-MMP, 2026 WL 549910, at *1 (S.D. Cal. Feb. 26, 2026); Maciel v. Noem, Case No. 1:26-cv-01318-DC-CKD, 2026 WL 496948, at *5 (E.D. Cal. Feb. 23, 2026); see also Moctezuma v. Henkey, Case No. 1:25-cv-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (observing that "[i[n recent months, courts across the country have ordered the release of detainees in similar situations" and collecting cases).

As these courts have found, release is an appropriate remedy given the nature of the violations at issue. "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under" Section 1225(b). Rodriguez Diaz, 53 F.4th at 1202. As discussed, these protections include: (1) The requirement that DHS generally obtain a warrant, issued following supervisory review, to arrest a noncitizen; (2) an initial custody determination by a DHS officer shortly after the noncitizen's arrest; (3) if the noncitizen is not released at the initial custody determination, the right to seek review before an Immigration Judge at a bond hearing; (4) the right to appeal an adverse Immigration Judge bond ruling to the BIA and to seek federal court review in habeas; and (5) the right to seek a new bond hearing before an Immigration Judge based on changed circumstances. Section 1226(a) and its implementing regulations therefore provide "several layers of review" to protect against erroneous deprivations of liberty. Rodriguez Diaz, 53 F.4th at 1202.

Therefore, it follows that "Petitioner's detention 'was unlawful from its inception because ICE detained him under the wrong statute and without affording him any notice or process whatsoever, much less the procedures due under Section 1226(a).'" Garcia-Maya, 2026 WL 1965886, at *8 (quoting Rodriguez-Acurio v. Almodovar, 811 F. Supp. 3d 274, 319-20 (E.D.N.Y. 2025)). "In the absence of an initial custody determination, which establishes a lawful basis for detention in the

first instance, a subsequent bond hearing 'is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip' Petitioner of his freedom." Id. (quoting Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)). Section 1226(a) provides critical protections that safeguard Petitioner's due process protected interest in freedom from arbitrary confinement. See Garcia-Maya, 2026 WL 1965886, at *5 ("[T]his Court finds that Petitioner is entitled to the procedural protections provided by § 1226(a), not merely by statute and regulation, but also by the Due Process Clause."); Bautista v. Santacruz, 813 F. Supp. 3d 1084, 1094 (C.D. Cal. 2025) (discussing "the due process protections found within § 1226(a)"); see also Bautista v. Santacruz, 820 F. Supp. 3d 1016, 1033 (C.D. Cal. 2026) (finding that the Government's noncompliance has led to "detention without due process" and "deprive[d] members of the Bond Eligible Class of their liberty, economic stability, and fundamental dignity"). The Supreme Court has long recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. Zadvydas, 533 U.S. at 690 (quoting Jackson v. Indiana, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: Ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. Id. at 690-92. Section 1226(a), and its implementing regulations, establish procedures to ensure that the government only detains noncitizens where it advances these purposes. By denying Petitioner these protections, Respondents have created an unacceptably high risk that Petitioner's detention was not justified on dangerousness or flight risk grounds and that he remained confined solely due to the government's refusal to comply with the judgment in Bautista.

/ / /

Because Petitioner's detention has been unlawful from its initiation, the Court concludes that the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing him from detention." Reyes, 2026 WL 2069974, at *2. The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." Lujan v. Garcia, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up); see also United States v. Stein, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has particular force where, as here, the protections at issue are intended to prevent an unlawful detention in the first place. See United States v. Morrison, 499 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

Release is particularly warranted given the government's continued refusal to comply with the final judgment in Bautista. "[I]n suits against government officials and departments, we generally assume that they will comply with declaratory judgments." United Aeronautical Corp. v. United States Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023). While the government has appealed the Bautista final judgment, "the government is rebelling against the basic principle underlying our constitutional order that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.'" Garcia-Maya, 2026 WL 1965886, at *9 (quoting United States v. United Mine Workers of Am., 330 U.S. 258, 293 (1947))). Under these circumstances, the Court finds that "law and justice" require Petitioner's release. See Hilton v. Braunskill, 481 U.S. 770, 775 (1987) ("Federal courts are authorized,

under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'"); Lujan, 734 F.3d at 933.

For the reasons set forth above, the Court grants the Petition and orders Petitioner to be immediately released from custody.[4]

## V.

## CONCLUSION

IT THEREFORE IS ORDERED that Judgment be entered: (a) Granting the Petition; (b) ordering Respondents to immediately release Petitioner Carlos Javier Irias (A# 094-293-851) from custody subject to the same conditions (if any) that he was subject to at the time he was arrested and detained; (c) ordering Respondents to return all property and documents confiscated from Petitioner (if any) during his arrest and processing into detention; (d) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without complying with all applicable statutes and regulations, including written notice and a pre-deprivation hearing before a neutral arbiter; and (e) ordering Respondents to file a status report within two (2) business days of the date of this Order to confirm that Petitioner has been released from custody, and that all property confiscated from Petitioner (if any) during his arrest and processing into detention has been returned to him.

DATED: November 19, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

[4] The Court's determination that Petitioner is entitled to habeas relief on the due process claim alleged in the Petition renders it unnecessary for the Court to address the other claims alleged in the Petition.